UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION


SOUTHEAST REAL ESTATE INVESTMENT CORPORATION     PLAINTIFFS/COUNTER-
AND RETAIL MANAGEMENT GROUP, INC.                                          DEFENDANTS

V.                                                                                         CIVIL ACTION NO. 1:07cv1197-LTS-RHW

NATIONWIDE MUTUAL INSURANCE COMPANY               DEFENDANTS/COUNTER-
AND JOHN DOES 1-10                                                                         CLAIMANT

**MEMORANDUM OPINION**

It is the Court's experience in Hurricane Katrina insurance litigation that commercial policies present more complicated issues than are normally found in the residential setting. This is not to say that homeowner policy claims are less important; it is simply a case that with commercial claims numerous types of losses are presented against a backdrop of determining the scope of coverage applicable to them. For example, in *Medical Plaza, LLC v. United States Fidelity and Guaranty Co.*, No. 1:07cv98, the Court faced a claim for various benefits, including loss to the undamaged portion of the building "as a consequence of enforcement of any ordinance or law which is in force at the time of loss . . . . " *Medical Plaza* involved damage caused by both wind and flood that resulted in the covered property's demolition.

The instant case also involves consideration of policy provisions dealing with governmental ordinances or laws, but this time in the setting of the repair of the covered building, which was not totally destroyed as the result of the storm, nor was it damaged by flood. Most of the motions pending in this cause of action arise out of the motion for summary judgment filed by the Defendant (Nationwide) [50].

Plaintiffs' [56] response to Nationwide's motion for summary judgment represents that the issues before the Court are "fact intensive," yet the parties are not helpful in specifying facts which appear without substantial controversy or in identifying what material facts are actually and in good faith controverted. As will be discussed, some of the "key" facts described by Plaintiffs are general and do not appear to be material. It is for the Court to thoroughly comb the record to determine if relief is warranted under Fed. R. Civ. P. 56.

Nationwide insured a 108,000 square foot commercial property owned by Delmar Plaza, LLC, located at 12057 Highway 49 North in Gulfport, Mississippi. The complex is known as Delmar Plaza, built in 1995 and housing several retail businesses (the largest being a Food Giant grocery store) and professional and government offices. Hurricane Katrina caused extensive damage to the covered premises on August 29, 2005. At the time of the loss, Delmar Plaza was

100% occupied. Plaintiff Southeast Real Estate Investment Corporation (Southeast) is a managing member of Delmar Plaza, LLC, and is also associated with Tuskeena Gulfport Center, LLC, the successor in ownership of Delmar Plaza. *See* discussion *infra*.

Over the course of approximately one year following the hurricane, Nationwide paid Southeast a little over $2,000,000.00 in benefits (approximately $1.8 million on the building claim and approximately $293,000 for lost rent/income). The checks were made payable to Southeast Real Estate Investments, LLC, d/b/a Delmar Plaza, LLC. Southeast ultimately submitted proofs of loss for approximately $3 million; Nationwide maintains that these additional losses include "code upgrades" and management fees which are excluded from coverage. It should be noted here that a management agreement existed between Plaintiff Retail Management Group, Inc. (RMG) and Delmar Plaza, LLC (signed on the latter's behalf by Southeast) from April 5, 2005, to October 14, 2005. This agreement was replaced by one dated October 14, 2005 between Tuskeena Gulfport Center, LLC (as owner, and also signed on its behalf by Southeast) and RMG.

The causes of action alleged in the 33-page [1] Complaint include negligent misrepresentation, fraud, breach of contract, breach of the implied covenant of good faith and fair dealing, and bad faith/tortious breach of contract. Southeast concedes in its response [56] to Nationwide's motion for summary judgment that the claim for "reformation based on equitable fraud" stated in count II of the Complaint should be dismissed. It should be pointed out that the Complaint contains a count for declaratory relief seeking "full insurance coverage for all damage to their insured commercial property . . . and all other losses caused by or related to Hurricane Katrina . . . ." In its [6] Answer, Nationwide counterclaimed for declaratory relief that "the claim submitted by the insured has been overpaid and that Nationwide is entitled to a refund from the insured for the overpayment"; thus the reason for the manner in which the case is styled. Nationwide's [50] Motion for Summary Judgment is aimed at all claims asserted by the Plaintiffs.

The most extensive hurricane damage at Delmar Plaza was to the Food Giant, the anchor store, especially its electrical and heating, ventilation, and air conditioning systems. The key questions presented in this case relate to the scope of language in several sections of the insurance policy which purport to exclude (with a limited exception) costs and expenses associated with ordinance or law provisions, which are regularly referred to by the parties as code upgrade coverage.

Plaintiffs procured the master/umbrella "blanket protector" policy for Delmar Plaza through Doug Pyron, who is referred to by Plaintiffs as their agent. Delmar Plaza was the 11th property location added to the policy of insurance at issue in this case. According to Pyron's affidavit, the only time Plaintiffs' representatives purchased law and ordinance coverage (defined by him as "insurance coverage that provides benefits for repairs/replacement costs after a loss that are incurred by the insured when required to comply with building code upgrades or new requirements") for a particular property was when mortgage companies wanted it included in the

policy. Pyron states that "[a]t no time did any representatives of Southeast . . . and [RMG] request that such coverage be provided for the property located at 12057 Highway 49 North, Gulfport, Mississippi, 39503." In addition, when Southeast and RMG were asked after the storm whether they wanted to add this particular coverage to the policy, it was declined on Delmar Plaza and on another property (added to the policy after Katrina) in Lucedale, Mississippi, as well as another location which was refinanced.

It is unnecessary for the Court to recite well known and established rules of insurance contract interpretation. It is not entirely correct for Nationwide to make the blanket statement that there is a total exclusion for costs associated with ordinance or law requirements because there is limited coverage in this regard. But a careful reading of the entire policy should make it abundantly clear that, with the exception of $10,000.00 available from coverage for increased cost of construction, costs and expenses for repair or reconstruction because of increased costs due to the enforcement of building, zoning, or land use ordinances or laws are excluded. This language is found in several parts of the policy, including the Building and Personal Property Coverage Form ("The cost of repair or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use, or repair of any property."); and the Causes of Loss–Special Form ("We will not pay for loss or damage caused directly or indirectly by any of the following . . . [I]ncreased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property."). Even when a "period of restoration" allows for an extended time for which benefits are available, it "does not include any increased period required due to the enforcement of any ordinance or law that . . . [r]egulates the construction, use or repair, or requires the tearing down of any property . . . ." As stated above, the additional coverage for increased cost of construction which is tied to repair or reconstruction which is a consequence of the enforcement of a building ordinance or law carries a $10,000 maximum payment (which in this case has been paid in the form of architect fees).

There is nothing vague or ambiguous about any of this language. In apparent recognition of this, Plaintiffs rely on two lines of attack. The first is that Pyron, who is not and never has been a party to this litigation, failed to issue "full and comprehensive coverage" as allegedly requested which would basically cover each and every damage/any and all costs caused by a hurricane, since this particular property is located on the Mississippi Gulf Coast. There are several reasons that this position fails.

In *Leonard v. Nationwide Mutual Insurance Co.*, 499 F.3d 419 (5th Cir. 2007), the court of appeals recognized that an "insured has an affirmative duty to read the policy," . . . and "[w]hether the policy was read or not . . . constructive knowledge of its contents is imputed to the policyholder." *Id.* at 438 (citations omitted). Although *Leonard* involved the alleged oral modification of an insurance contract, these principles are instructive in the instant case.

In connection with its summary judgment motion, Nationwide seeks to strike [62] the affidavit of Christopher B. White, Southeast's president and sole owner. If anything, this

affidavit is more favorable to Nationwide than to Southeast. White never had any conversations with Pyron about law and ordinance coverage, whether as covered or excluded under the policy. Even accounting for the mere fact that White may have expressed concerns about coastal region properties and the dangers of hurricanes, it does not follow, nor is it reasonable, that an agent would conclude that this meant the need for code upgrade coverage because this type of expense is not unique to where a property is located or to a hurricane. Asking for full and comprehensive coverage in this context is akin to a homeowner requesting hurricane coverage and mistakenly thinking that flood is included when there is a valid and unambiguous water exclusion. The United States Court of Appeals for the Fifth Circuit has made its position well known on this latter circumstance: water is not covered. *Leonard*; *see also Tuepker v. State Farm Fire & Casualty Co.*, 507 F.3d 346 (5th Cir. 2007).

Furthermore, Southeast delegated to RMG the responsibility for handling insurance matters, including familiarity with the policy. It is no answer to claim that they did not have a copy of the subject policy. Prior to the Delmar Plaza property being added to it, there were ten other properties covered by the policy. Plaintiffs knew or should have known its contents, and they will not be heard to plead ignorance. Additionally, as a housekeeping matter, since White's affidavit as well as an exhibit compiled by Karen Payne, which are the topics of two of Nationwide's motions to strike ([60] and [62]), do not alter the Court's ruling that the ordinance or law provisions are valid and not ambiguous, and that there are no viable claims for negligent misrepresentation or fraud, those motions will be deemed to be moot.

The other aspect of Plaintiffs' argument is more confusing. Its [1] Complaint is replete with references to the "code upgrade" coverage and the fact that it should not be excluded; yet its [56] response to Nationwide's motion for summary judgment suggests that these provisions of the policy for the most part do not apply to their loss. In support, they offer the affidavits of Rick Bell and Wendell Covington for the proposition that at least some of the repairs were not a result of ordinance or law requirements, but that they are the product of "safety issues and concerns." It should go without saying that the sole purpose of building codes and ordinances governing repairs and reconstruction is safety.

That is why Nationwide's [58] motion to strike these affidavits and preclude the use of any undisclosed experts is so troublesome. Nationwide argues that Bell and Covington are nothing more than expert witnesses whose roles as such were not disclosed by Plaintiffs. Plaintiffs label them as fact witnesses. It appears to the Court that they are both, and drawing an accurate line where the expert and fact parts of their testimony fall is difficult at this time.

Bell and Covington are not unfamiliar to Nationwide, for they were both part of the claim investigation process. And for the most part, like White in his affidavit, Bell and Covington do not weaken Nationwide's claim decision. For example, Bell, an electrical contractor, describes the Food Giant as a "complete and utter mess," and identifies the major problems that he found. Covington, an architect, goes so far as to state that the City of Gulfport's "Building Codes Services Department required that the scope of the work, as previously envisioned by the

contractor, be *increased* in large part due to the concern by the City Inspector's office over the deteriorated and damaged condition of the electrical system in the Food Giant premises *as well as safety issues*." (Emphasis supplied)  Covington and others at his firm put together "the plans for the *increased work concerning the electrical system and safety issues.*" (Emphasis supplied) Covington understood that "[i]t was clear that the Building Code Services office was not going to ultimately provide a Certificate of Completion until its concerns about the state of damage and safety were met."  These statements smack of code upgrades, and "the City Inspector's decision to require the *extra work and extra cost*" (emphasis supplied) confirms this.

      The ultimate goal of litigation should be the truth, and any party's ability to search for it. The Court is not convinced that Nationwide has had this opportunity.  The Court is not certain if there are any remaining benefits available that do not fall within the code upgrade exclusion. The Court also does not believe that Plaintiffs want to risk the immediate (or even ultimate) exclusion of Bell and Covington as witnesses.  (As an aside, the Court is not going to engage in an extensive discussion on procedure/form vs. substance, because, like the expert/fact dichotomy of the two witnesses, there is a little of each at play here.)  At the same time, they are going to be made available to Nationwide as contemplated by the Federal Rules of Civil Procedure and the Federal Rules of Evidence applying to expert witnesses.  The parties should understand that the testimony will be obtained under the guidance of this ruling that expenses and costs for code upgrades are excluded from coverage under the subject policy.  There may be some repair or reconstruction work that does not fall within this excluded category of damages (the Court is also not sure if there are any benefits for lost business or rental income that may be affected by this decision, and that question will be left open for now, also).

      The Court notes that a settlement conference before the United States Magistrate Judge is scheduled on November 18.  A plan for discovery on these two witnesses that hopefully does not jeopardize the January 20 trial date should be established at this conference.

      Nationwide also maintains that the management fees sought by the Plaintiffs qualify as excluded consequential damages under the policy and, therefore, coverage for them does not exist under the policy.  The Court agrees.  In the management agreements between Southeast and RMG and between Tuskeena Gulfport Center and RMG, there are provisions that RMG "shall be paid an amount equal to five percent (5%) of the cost of reconstruction or repair for the supervision of major reconstruction including any repairs due to condemnation or casualty loss, . . ."  These are unquestionably "any other consequential loss" (defined by the seventh edition of Black's Law Dictionary as "[a] loss arising from the results of damage rather from the damage itself") excluded by the policy and are not Nationwide's responsibility.  Also, it cannot be ignored that these management fees have been paid by Tuskeena Gulfport Center, which is not a party to this lawsuit.

      Finally, it should be clear from the above discussion that Nationwide had reasonable ground to believe that it was correct in taking the position that upgrades required by a law or ordinance regulating buildings in the repair and reconstruction process are not covered.  The state

of the record is such that the Court is in a position to hold that what remains is a legitimate coverage and pocketbook dispute, and that there are no genuine issues of material fact on the issue of punitive damages, thereby justifying judgment as a matter of law on this aspect of the case.

An appropriate order shall issue.  This the 17th day of November, 2008.

s/ L. T. Senter, Jr.<br>
L. T. SENTER, JR.<br>
SENIOR JUDGE